UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**CELIA ARGANA,**

    **Plaintiff,**

v.                                    **Case No: 5:17-cv-103-Oc-18PRL**

**COMMISSIONER OF SOCIAL SECURITY**

    **Defendant.**

### REPORT AND RECOMMENDATION[1]

Plaintiff appeals the administrative decision denying her applications for Disability Insurance Benefits ("DIB"). Upon a review of the record, the memoranda, and the applicable law, I recommend that the Commissioner's decision be **AFFIRMED**.

**I.    BACKGROUND**

In August 2013, Plaintiff filed an application for DIB benefits, alleging disability beginning on March 10, 2012. Plaintiff was last insured through December 31, 2014. Plaintiff's claim was denied initially, and upon reconsideration. At Plaintiff's request, a hearing was held on June 16, 2015, where both Plaintiff and an impartial vocational expert testified. On October 6, 2015, the Administrative Law Judge (ALJ) issued a notice of unfavorable decision, finding Plaintiff not disabled. (Tr. 13-31). Plaintiff's request for review was denied by the Appeals Council (Tr. 1-6), and Plaintiff initiated this action on March 14, 2017. (Doc. 1). Plaintiff has exhausted her

---

[1]Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); Local Rule 6.02. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

administrative remedies, and the final decision of the Commissioner is ripe for review under 42 U.S.C. § 405(g).

Based on a review of the record, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar and cervical spine, irritable bowel syndrome, bipolar disorder, depression, and anxiety. (Tr. 15).

The ALJ found that the Plaintiff had the residual functional capacity to perform less than the full range of light work. (Tr. 17-18). Plaintiff was able to lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk 6 hours in an 8-hour workday and sit 6 hours in an 8-hour workday; she required option to sit/stand 30 minutes alternating; could not climb ladders, ropes or scaffolds, frequently stoop, crouch; and could not crawl or kneel. Plaintiff could perform simple repetitive tasks; tolerate frequent interaction with supervisors/co-workers; and occasionally travel in public transportation.

Based upon his RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could have performed, including sandwich board carrier, cleaner housekeeping, and sorter agriculture produce. (Tr. 30-31). The ALJ's finding included his consideration of Plaintiff's limitations that erode the unskilled light occupational base, and the vocational expert's testimony regarding what functions Plaintiff could perform in light of his limitations. Accordingly, the ALJ determined that Plaintiff was not disabled from March 10, 2012, the alleged onset date, through December 31, 2014, the date last insured.

## II.   STANDARD OF REVIEW

A claimant is entitled to disability benefits when he or she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§416(i)(1), 423(d)(1)(A); 20 C.F.R. §404.1505(a).

The Commissioner has established a five-step sequential analysis for evaluating a claim of disability, which is by now well-known and otherwise set forth in the ALJ's decision. *See* 20 CFR §§ 404.1520(a), 416.920(a); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The claimant, of course, bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

The scope of this Court's review is limited to a determination of whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). Indeed, the Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). This is clearly a deferential standard.

**III.   DISCUSSION**

Plaintiff argues that the ALJ violated the treating physician rule by rejecting the opinions of Plaintiff's treating physicians. (Doc. 19 at 21-22). However, Plaintiff fails to identify any doctor or cite to any opinion that the ALJ should have given greater weight. Presumably, Plaintiff is referring to the opinions of treating physicians Dr. Patricia McEchtrane-Gross and Dr. Timothy Byrd. (Tr. 28-9). As discussed below, the ALJ provided good reasons, supported by substantial evidence, for giving little weight to the opinions of both of those doctors. Moreover, to the extent Plaintiff is challenging the ALJ's reliance on the opinion of consultative examiner Dr. Samer Choksi, M.D., such argument is not well-taken.

The ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Winschel v Comm'r of Social Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The opinions of treating physicians are entitled to substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Commissioner of Social Security*, 363 F. 3d 1155, 1159 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997)). Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). With good cause, an ALJ may disregard a treating physician's opinion, but she "must clearly articulate [the] reasons" for doing so. *Id*. at 1240-41. "In the end, the ALJ may reject the opinion of any physician if the evidence supports a contrary conclusion." *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 Fed. App'x 875, 877 (11th Cir. 2013) (*citing Syrock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).

1. <u>Dr. Gross</u>

The ALJ accorded little weight to Dr. Gross's medical source statements finding that the opinions were "grossly overstated when compared to her treatment notes." The ALJ considered Dr. Gross's August 2012 medical source statement, as well as a pain questionnaire and a residual functional capacity evaluation form completed in May 2015. (Tr. 28, 355-57, 489-93, 494-96).

Plaintiff began treatment with Dr. Gross in April 2012. She reported neck pain, anxiety and fatigue, improving appetite and no more diarrhea. (Tr. 425-27). Plaintiff had decreased range of motion of right upper extremities and shoulder with low abduction and inability to elevate and fully extend right arm above her head, and reduced grip strength. Dr. Gross noted possibility of inflammatory disease throughout her body. Plaintiff reported getting better in August 2012. (Tr. 433).

In August 2012, Dr. Gross completed a medical source statement in which she noted that Plaintiff could occasionally lift 10 pounds, frequently lift less than 10 pounds, stand and walk less than 2 hours, sit less than 2 hours, and required an option to alternate between sitting and standing. (Tr. 355-56). She opined that Plaintiff would need to lie down in the early afternoon; could occasionally twist and squat, but could never crouch or climb stairs/ladders. (Tr. 356). Plaintiff was limited in her ability to reach and push/pull, but she could handle, finger, and feel without limitation. She had various environmental restrictions and would miss work once per week.

Plaintiff returned to Dr. Gross in May 2013. (Tr. 436). Plaintiff reported traveling to a few long distance events. Dr. Gross diagnosed a urinary tract infection and glycosuria. In August 2013, Plaintiff returned with complaints of right facial pain and body aches. (Tr. 438). She reported doing well until that visit. Dr. Gross diagnosed acute sinusitis and mixed hyperlipidemia. Plaintiff returned more than one year later, in July 2014, and reported feeling the worst that she had in years with tremors and constipation. (Tr. 469-71). In August 2014, her main complaint was feeling tired.

(Tr. 472-73). In February 2015, Plaintiff returned and reported new onset of left shoulder pain and ongoing IBS. (Tr. 473-74). On examination, Plaintiff was unable to lift or bend arm, tenderness was noted on palpation of left shoulder. Dr. Gross diagnosed disorders of bursae and tendons in shoulder region, unspecified.

Then, in May 2015 (five months after Plaintiff's date last insured), Dr. Gross noted on a RFC evaluation form that Plaintiff could not lift anything over ten pounds since her 2006 neck surgery; could occasionally lift 1 to 5 pounds; could sit and work at one time for up to 30 minutes and stand and work at one time for 30 minutes to 1 hour. (Tr. 28, 494-96). Dr. Gross also completed a clinical assessment of pain questionnaire in which she noted that Plaintiff had a moderate restriction on her ability to maintain attention and concentration for extended periods; ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; and ability to interact appropriately with the general public. (Tr. 489-93). Dr. Gross further opined that plaintiff had a marked limitation in her ability to complete a normal workday and workweek without interruptions from pain and to perform at a consistent pace without an unreasonable number of length and rest periods.

Accordingly, substantial evidence supports the ALJ's finding that Dr. Gross's treatment records, along with the record as a whole, failed to support her opinions of disabling limitations. This is good cause for the ALJ to discount the opinions of Dr. Gross. *See e.g.*, 20 C.F.R. § 404.1527(c)(3). In addition, as the ALJ discussed, Plaintiff's activities of daily living also undermine Dr. Gross' opinions of extreme limitations. (Tr. 26, 28). The ALJ noted that despite Plaintiff's testimony that her ability to focus was not good and she was forgetful, she was able to drive, manage her finances, read, and play games on the computer. She could perform light cleaning, dusting and folding laundry, prepare simple meals, care for pets, and shop. Moreover,

the ALJ limited Plaintiff to light work with a sit/stand option and additional postural limitations (Tr. 17-18), and Plaintiff fails to explain how Dr. Gross's opinion supports additional functional limitations. (Doc. 19 at 18-22).

    2. Dr. Byrd

With respect to Dr. Byrd, the ALJ discussed his medical source statements in detail, but found that his opinions of disabling limitations were not consistent with his treatment notes that "document a relatively stable set of conditions with high GAFs."[2] On June 29, 2012, Plaintiff began treatment with Dr. Byrd, who is a psychiatrist, for mental health issues. (Tr. 346-48). Plaintiff reported depression and anxiety. On examination, Dr. Byrd noted that Plaintiff's mood was troubled and sad and she admitted feeling hopeless, and helpless. However, her affect was appropriate and mood was congruent; thought processes were organized and goal directed; and thought content was of normal quantity and quality. Her speech was normal and her cognitive functions were grossly intact. Dr. Byrd's initial impression was bipolar disorder, partner-relational problem, hypertension, coronary artery disease, and degenerative disc disease.

On July 27, 2012, Dr. Byrd completed a medical opinion re: ability to do work-related activities (mental). (Tr. 337-40). Dr. Byrd opined that Plaintiff's ability and aptitude to perform unskilled work was fair to poor due to anxiety, depression, diminished cognitive functioning, interpersonal hypersensitivity, and physical decline. He opined that Plaintiff would be absent from work more than three times a month.

In August 2012, Plaintiff's mood was moderately improved and she felt "more in control." (Tr. 418-20). She was oriented times four, had normal thought processes and she was

---

[2] The ALJ also acknowledged that GAF scores are not standardized nor designed to predict patient outcomes; and that as a result, they are no longer included in the DSM-V. (Tr. 29). Nonetheless, the ALJ accorded some weight to the GAF scores of 70s because they are well supported and consistent with the other evidence.

able to perform her activities of daily living independently. Dr. Byrd diagnosed bipolar disorder, depressed; mild to moderate psychosis; chronic cervical pain; coronary artery disease, status post medical infarction; IBS; hypertension; and degenerative disc disease. He assigned a GAF of 60.

In September 2012, Plaintiff saw Dr. Byrd. (Tr. 534-36). While Plaintiff reported feeling anxious and having trouble leaving the house, she was oriented to person, place, time, and current situation, she had excellent eye contact, normal thought process, and she had full affect. Plaintiff reported an upcoming trip to North Carolina. Her GAF was 65.

In October 2012, Plaintiff reported worsening depression since returning a week earlier from North Carolina. She reported decreased concentration, anhedonia, stress, and agoraphobia. (Tr. 531-33). Dr. Byrd diagnosed Bipolar I disorder, depressed, severe without psychosis and assigned a GAF score of 55. In November 2012, Plaintiff continued to report struggling with mood and pain. (Tr. 360-61). Dr. Byrd prescribed medication and individual therapy. By December 2012, Plaintiff reported feeling better with medication change to lithium. (Tr. 526-28). In January 2013, Plaintiff reported "doing well" and her GAF was 75. (Tr. 523-25). Three months later, in April 2013, Plaintiff continued to report improvement and her GAF was 70. (Tr. 520-22). While Plaintiff reported bouts of anger and anxiety, her appetite was good, sleep was restful, and she was oriented times four. In July 2013, Plaintiff reported being "bad" with increased anxiety. (Tr. 517-19). She was very upset about denial of SSI claim. Dr. Byrd assigned a GAF score of 50.

On October 30, 2013, Dr. Byrd completed a Treating Source Mental Status Report. (Tr. 464-65). He noted that Plaintiff's mood was severely depressed, sad, helpless, and her affect was blunted. Her thought was organized and goal-directed, but it was negativistic, self-defeating, and hopeless, not of psychotic proportions. Plaintiff was oriented times four and her concentration

was fair. Her immediate and recent memory was fair, remote memory was good. She had no hallucinations. Her appearance was somewhat disheveled, but appropriate. Gait/coordination was normal and she was competent to manage funds independently. Dr. Byrd opined that Plaintiff was unable to work in any capacity due to severe, morbid level of depression accompanied by deficits in sustained concentration, persistence, stamina, social interactions, and adaptation. Dr. Byrd opined that Plaintiff was not capable of sustaining work activity for eight hours a day, five days a week.

In January 2014, Plaintiff reported that the holidays had been tough because her daughter had moved to New Jersey. (Tr. 512-14). Dr. Byrd prescribed medication and recommended counseling but Plaintiff could not pay for it. In April 2014, Plaintiff was still grieving her daughter's move out of state. (Tr. 509-11). She reported worsened mood and poor attention. Dr. Byrd treated with medication.

In August 2014, Plaintiff reported that her mood was slightly improved but her anxiety was questionably worse. (Tr. 506-07). Dr. Byrd diagnosed bipolar I disorder, stable and noted that Plaintiff would return for medication management in three months. In November 2014, Plaintiff was "so-so" and reported family conflict with brother-in-law. (Tr. 503-05). In February 2015, Plaintiff was much improved but she complained of short-term memory problems. (Tr. 500-02). Her overall prognosis was good and Dr. Byrd noted that he would see her in 3 months for medication management.

In May 2015, Dr. Byrd completed a mental residual functional capacity assessment in which he opined that Plaintiff had marked restriction in the ability to understand, remember, and carry out detailed instructions and mild restrictions in the ability to remember locations and work-like procedures and the ability to understand, remember and carry out short and simple

instructions. (Tr. 486-88). Plaintiff had extreme limitations in the ability to maintain attention and concentration for extended periods, and to perform activities within a schedule, maintain a regular attendance and be punctual. With respect to social interaction, Plaintiff's limitations were mild to moderate. As for adaptation, she had marked limitation in her ability to set realistic goals or make plans independently of others; moderate limitation in her ability to travel in unfamiliar places or use public transportation and to respond appropriately to changes in the work setting.

Accordingly, substantial evidence supports the ALJ's finding that Dr. Byrd's treatment notes, along with the record as a whole, failed to support his opinions of disabling limitations. The ALJ also found that Plaintiff's activities of daily living were not consistent with disabling limitations. (Tr. 26). Thus, the ALJ articulated good cause for discounting Dr. Byrd's opinions. Moreover, the ALJ limited Plaintiff to performing simple repetitive tasks, frequent interaction with supervisors and co-workers, and only occasional travel in public transportation. Other than generally asserting that she is "mentally ill," Plaintiff fails to argue how Dr. Byrd's opinions should result in a more functionally limited RFC. (Doc. 19 at 21).

   3.  Dr. Choksi

Without identifying or explaining the alleged error, Plaintiff takes issue with the ALJ's consideration of the opinion of consultative examiner, Dr. Choksi. (Doc. 19 at 19-21). Dr. Choksi conducted a consultative examination on September 10, 2013. (Tr. 448-53). On mental status, Plaintiff had good judgment, normal mood and affect, she was oriented times three, and her recent and remote memory was normal. On physical examination, Plaintiff's neck and back were tender with palpation; extremities had no cyanosis, edema, effusion, deformities, or muscle spams; no signs of carpal tunnel; normal gait and station and her supine and seated leg raise was normal bilaterally; and normal upper bilateral grip strength and muscle tone, as well as upper and

lower extremity strength was 5/5. Based on his examination and review of records, Dr. Choksi opined that Plaintiff was capable of driving a vehicle, able to change clothes and perform self-hygiene and cook and clean for herself; she is able to interact in public and maintain a sufficient level of functional ability by performing grocery shopping and banking activities. The ALJ properly gave great weight to Dr. Choksi's report, because it was consistent with the other record evidence. Dr. Choksi's report provides further evidence to support the ALJ's decision to accord little weight to the opinions of Dr. Gross and Dr. Byrd.

IV.   **RECOMMENDATION**

For the reasons stated above, substantial evidence and proper legal analysis supports the ALJ's decision that Plaintiff is not disabled. It is respectfully **RECOMMENDED** that the ALJ'S decision be AFFIRMED under sentence four of 42 U.S.C. § 405(g).

**DONE and ORDERED** in Ocala, Florida on May 2, 2018.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties